JACOB WOODSIDES, Plaintiff in Error, *v.* JAMES RICKEY, Defendant in Error.

*Error to Marion.*

Courts of the territory have jurisdiction to protect a settler from any invasion of, or actual injury to his claim.

RICKEY settled on the public land, under the act of Congress granting lands to settlers in Oregon, upon condition of four years' residence and cultivation, and marked out the boundaries of his claim. Afterwards, an older settler, whose boundary does not appear to have been previously defined, filed in the land-office a notification, covering a part of Rickey's claim.

Woodsides, being sued by Rickey in the District Court of Marion County, in an action of trespass, for cutting timber on the disputed tract, defended as the servant of the other claimant, and asked the court to instruct the jury that Rickey, not having filed his notification, could not recover. The court refused the instruction, and Rickey had a verdict and judgment—to reverse which, this writ of error is prosecuted.

*Harding & Grover*, for plaintiff.

*Barnum*, for defendant.

OLNEY, J.   Two propositions have been submitted in the argument:

*First.* That the courts have not jurisdiction to settle conflicting boundaries, that power having been conferred upon the surveyor-general.

*Second.* That one who files his notification within three months after the survey, is entitled to hold against one who does not.

Woodsides *v.* Rickey.

Of the abstract question of boundary it is clear the courts have not jurisdiction. A suit cannot be maintained for the mere purpose of deciding such a controversy. But it does not follow that the boundary between claims cannot be investigated by the courts as a means to some other end. If they are competent to do any act, which they cannot do without a knowledge of the true boundary, then the principal power necessarily includes the incidental one.

That the settler would have a sufficient standing in a court of equity to restrain adverse claimants, as well as strangers, from committing waste and injury, while his title remains inchoate, cannot be doubted. While in possession, complying with the conditions of the grant, equity will preserve for him, in the event of his success, whatever is in itself valuable, or gives value to the land, as timber, stone, water, and all other incidents and appurtenances, as nature made them. This may be done without inquiring which of two conflicting claimants has the older or better right. It is only necessary that the applicant for such aid is claiming and may succeed in obtaining the land. The injunction is a favorite remedy in this class of cases, since it may be applied with little delay or expense, and be so moulded to the circumstances of each case, as to save the rights of each without impairing the rights of any.

But the power of the court to adjudicate a disputed boundary, as a means of affording an action of trespass or ejectment to the older, or otherwise better claimant, is a different question, and must depend on the nature of the settler's right. If it is purely equitable, he must look to the courts of equity alone for protection. If it is also of legal cognizance, the courts of law must afford a remedy.

The settler's relation to the land is that of an occupant under a contract of purchase. He has accepted the proposition of the government, and entered upon the land in accordance with the terms proposed, and severed it from the body of the public lands by definite boundaries, and is in possession, complying with the conditions of the purchase.

In *White* v. *Guirons, Minor,* 331, it was held that one who had contracted with the owner to settle on the land and make improvements, and perform certain conditions, and then to have a deed, was entitled to an action for possession against a stranger.

In *Gilday* v. *Watson,* 2 *Sergeant & Rawle,* 410, it was held, that a settlement with intent to take the whole of a vacant tract, under a law of Pennsylvania, which entitled the settler to a patent, on proof of compliance with certain conditions, part of which were settlement and improvement, gave the settler legal possession of the whole tract.

Occupancy, with a view to obtain a settler's right under the laws of Pennsylvania, has always been regarded as giving the occupant a legal title and possession, to the extent of his survey, though unenclosed, against all persons except the State. This is believed to have been the doctrine of all the colonial proprietors and States, who disposed of lands by this and similar modes, though the dearth of books in this territory renders an investigation of the subject impracticable. It is, however, quite clear upon principle, that when the government, or other owner, contracts with the purchaser that he shall occupy the land in order to entitle himself to a conveyance, the contract gives the right of possession ; and actual occupancy under the contract is possession of the entire tract, whether enclosed or not ; and this possession and right of possession are exclusive, and sufficient to support an action for trespass, unless the defendant shows a better right. As the settler has possession, and a right to the exclusive possession of his entire claim, it follows that he must have a remedy for any wrongful invasion of it.

The surveyor-general can only decide the abstract question of right between the claimants. He cannot protect the true owner against wrong-doers. This can be done only by the judicial tribunals. Congress has established the land office and the courts. To the one it has given the power to *determine* the right, and to the other power to *protect* the right.

It being the right of the settler to be protected in his pos-

Woodsides *v.* Rickey.

session, while he continues to comply with the terms of the law, and the duty of the courts to afford him that protection, the existence and extent of his alleged possession must be ascertained. If two claim adversely to be in possession of the same tract, by virtue of having included it within their respective boundaries, the legal possession is in him in whom the right is. In such a case of mixed possession, it becomes necessary to ascertain which is the true owner, in order to determine which has possession, and to afford him the protection to which he is entitled. The court must, therefore, adjudicate the right, not as an end, but as a means to an end.

When a qualified settler has set lawful boundaries to his claim, and has commenced his residence and cultivation, the land is severed from the public domain, and has become his private property. When forfeited or abandoned, and not before, it falls back into the mass of public lands, and becomes again subject to settlement. Whilst it remains private property, the owner has the same rights and remedies against third persons, as if his title, such as it is, were indefeasible. That title is an equitable one, accompanied by possession, and the right of possession, which is sufficient to maintain and defend an action at law, against third persons, not clothed with the legal title.

Rickey, having first included the disputed tract within his boundaries, was the true owner, and was, therefore, in possession, and entitled to maintain the action, unless the other claimant gained priority by filing the first notification. The record does not contain sufficient to present this question. It does not appear that Rickey could not file a notification, dating his settlement prior to the notification of the adverse claimant. The instruction was, therefore, properly refused.

By the Court—Judgment affirmed.

*Harding & Grover,* for plaintiff.

*Barnum,* for defendant.