No. 19,539.

UNITED WESTERN MINERALS COMPANY *v.*
JOHN F. HANNSEN, ET AL.
(363 P. [2d] 677)

Decided July 17, 1961. Rehearing denied August 14, 1961.

Mr. J. HARRISON HAWTHORNE, for plaintiff in error.

Messrs. STINEMEYER & STINEMEYER, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE MOORE.

WE will refer to plaintiff in error as United and to defendants in error as plaintiffs, as they appeared in the trial court. Since there is but one controlling question involved in this review, we limit consideration to those portions of the record which bear directly upon that issue.

Plaintiffs, as lessors, entered into a written contract with United, as lessee, under which sixteen unpatented lode mining claims were leased for a period of two years ending December 21, 1958. The annual rental which United agreed to pay was $3,200.00. In the complaint it is alleged that on the date the action was commenced there was due the annual rental for the second year of the lease plus interest thereon. United filed an answer in which the execution of the lease was admitted, and further alleged that:

"There has been a failure of consideration for the Mining Lease marked Exhibit A-1 for the reason that the Plaintiffs failed to make a discovery on any of the mining claims described in such lease; that, having failed to make a discovery, the Plaintiffs did not acquire title to the said mining claims and held no property rights therein which could be made the subject of a lease."

By counterclaim United sought to recover all sums theretofore paid under the terms of the lease.

Plaintiffs moved for judgment on the pleadings, which motion was granted. In dismissing the counterclaim and entering judgment as prayed in the complaint, the trial court found, inter alia:

"That the demand for relief set forth in the Amended Complaint herein is a claim for rental due under the terms of Mining Leases Plaintiffs Exhibits 'A-1' and 'A-2' attached to the Amended Complaint herein in the sum of $3290.66 plus interest at the legal rate from June 11, 1959 and costs; that the Defendant by way of Answer admits all the material allegations of the Amended Complaint including the execution of the Mining Leases and the refusal of defendant to pay the rental as provided by said leases; the sole defense attempted to be set up by the Answer and incorporated by reference in the counterclaim is the affirmative defense of failure of consideration, alleged at paragraphs 5 and 6 of the Answer, in which defendant alleges that the Plaintiffs failed to make a discovery on any of the mining claims in the lease described, and therefore the Plaintiffs held no property rights which could be made the subject matter of a lease; that Plaintiffs represented to Defendant that said mining claims were valid and in reliance thereon Defendants entered into said Leases; the Court finds as a matter of law that such allegations do not constitute, in law, the affirmative defense of failure of consideration, for nowhere in the pleadings appears an allegation that the Defendant was even disturbed in its possession of the leased premises or that Defendants have suffered any damages monetary or otherwise by reason of any representations made by the Plaintiffs; that the counterclaim of the Defendant is likewise essentially based on the allegation contained in Paragraphs 5 and 6 of the Answer, and therefore, states neither an affirmative defense or a claim upon which relief can be granted against the Plaintiffs:"

United seeks review of the judgment by writ of error.

The lease between the parties was made a part of plaintiff's complaint. It contained the following provision:

"The Lessor hereby warrants and agrees to defend the title to the demised premises, against all persons lawfully claiming by, through or under the Lessor, but not otherwise, * * *."

In essence, this provision of the lease forecloses consideration of any argument based upon an implied warranty of title, or a general warranty thereof. It defines the limits within which plaintiffs obligated themselves to defend the title to the claims, all of which were adequately described by location certificates appearing of record in the office of the clerk and recorder of the proper county.

On the face of the record it is undisputed that plaintiffs were asserting rights in, and were "in possession" of, the mining claims as evidenced by the location certificates above mentioned. United paid cash, and agreed to pay the rental involved in this action. In consideration thereof plaintiffs granted United the right to go upon the premises for exploration purposes, and " * * * for the purpose of mining and removing therefrom the minerals and mineral ores of every kind and character which may be contained therein, * * *."

Accomplishment of a valid location of a mining claim involves a number of essential acts on the part of the claimant, including the requirement that he shall go into possession; that he perform certain assessment work; and that there be discovery of a mineral deposit. As between United and plaintiffs, no rights of third parties having intervened, there is no requirement that any one of these essential acts should be performed in advance of any other. The applicable general rule is stated in 58 C.J.S. p. 80, §34, as follows:

"Except in so far as one step in the proceedings is dependent on another, the order in which the several requi-

site acts are performed is immaterial, provided they are all performed before the rights of others have intervened."

At page 89 of the same volume (§42) we find the following pertinent statement:

"Although the statutes do not expressly require a discovery before other acts of location, in practice, discovery of minerals usually precedes the location of a mining claim. Hence, although a location must rest on discovery and will not be complete until the discovery is made, in the absence of intervening rights the time of making the discovery with relation to the other acts of location is immaterial, and, although it is made subsequent to the performance of other acts of location, the location, at least from the date of the discovery, is valid and effective except as against persons who in good faith have acquired intervening rights. *Thus, in the absence of intervening rights,* it is immaterial that mineral is not discovered on the claim until after the notice of location is posted and the boundaries marked. \* \* \* " (Emphasis supplied.)

The above rule has been recognized and applied under varying circumstances in *Brewster v. Shoemaker,* 28 Colo. 176, 63 Pac. 309; *The Treasury Tunnel, Mining and Reduction Company v. Boss,* 32 Colo. 27, 74 Pac. 888; and *Eureka Exploration Co. v. Tom Moore Mining and Milling Co.,* 52 Colo. 623, 123 Pac. 655.

*Brewster v. Shoemaker,* supra, is referred to in an article by Prof. Clyde O. Martz in 27 Rocky Mountain Law Review, p. 380, in which he comments as follows:

"Prospectors are protected only against forcible and clandestine entries upon the situs of their workings. They cannot pre-empt any part of the public domain until actual discovery. Where the ore bodies lie a considerable depth below the surface, as in the case of many uranium deposits, the miner's position is insecure. Regardless of the time and money spent in search of the deposit, he may be deprived of development rights if a

competing prospector on adjoining lands wins the discovery race."

In a footnote to that article appears the following statement:

"In advance of discovery the prospector has only a *pedis possesio* right that protects him against forcible fraudulent or clandestine intrusions upon his actual possession. See *Cole v. Ralph,* 252 U.S. 286."

From *Cole v. Ralph,* supra, we quote:

"In advance of discovery an explorer in actual occupation and diligently searching for mineral is treated as a licensee or tenant at will, and no right can be initiated or acquired through a forcible, fraudulent or clandestine intrusion upon his possession. But if his occupancy be relaxed, or be merely incidental to something other than a diligent search for mineral, and another enters peaceably, and not fraudulently or clandestinely, and makes a mineral discovery and location, the location so made is valid and must be respected accordingly. *Belk v. Meagher,* 104 U.S. 279, 287; *Union Oil Co. v. Smith,* 249 U.S. 337, 346-348, and cases cited.

"A location based upon discovery gives an exclusive right of possession and enjoyment, is property in the fullest sense, is subject to sale and other forms of disposal, and so long as it is kept alive by performance of the required annual assessment work prevents any adverse location of the land. *Gwillim v. Donnellan,* 115 U.S. 45, 49; *Swanson v. Sears,* 224 U.S. 180."

In *Weed, et al. v. Snook, et al.,* 144 Calif. 439, 77 Pac. 1023, the applicable rule was stated as follows:

"One who thus in good faith makes his location, remains in possession, and with due diligence prosecutes his work toward a discovery, is fully protected against all forms of forcible, fraudulent, surreptitious, or clandestine entries and intrusions upon his possession. * * * They [the locators] have then this right of possession, and with it the right to protect their possession, against all illegal intrusions, and to work the land for the valu-

able minerals it is thought to contain. We cannot conceive why these rights may not in good faith be made the subject of conveyance by associates as well before as after discovery."

To like effect is *Frazier v. Consolidated Tungsten Mines*, 80 Ariz. 261, 296 P. (2d) 447.

■ In the instant case plaintiffs, prior to execution of the lease, had the right to occupy and explore the lands in question for minerals, and to protection in the enjoyment of such right against any forcible, fraudulent or clandestine intrusion by other persons. These rights were transferred to United and the lease is not void for lack of consideration. The trial court correctly held that the answer stated no defense and the judgment accordingly is affirmed.

MR. JUSTICE DAY and MR. JUSTICE DOYLE concur.